## Case No. 10,258.

### NICOLL v. UNITED STATES.

[1 U. S. Law Int. 24.]

Circuit Court, E. D. Pennsylvania. Nov. 22, 1829.

CONTRACTS—EXECUTION—PRIMA FACIE EVIDENCE OF CONSIDERATION.

[In an action of trespass against the United States to recover damages for seizing and detaining certain ships and cargoes,—the marshal having levied upon them as the property of a third person, indebted to the government in a large amount for duties,—plaintiff claimed the ships and cargoes under certain documentary titles derived from the debtor prior to his failure. *Held*, that the execution of the instruments conveying title to plaintiff was prima facie evidence of consideration.]

[At law. Action by F. H. Nicoll against the United States for damages for the illegal seizure and detention of certain ships and their cargoes.]

The action was an action of trespass, brought by plaintiff to recover damages of defendant for seizing and detaining certain ships, and large quantities of valuable goods, altogether valued between two and three hundred thousand dollars, alleged to be the property of the plaintiff, F. H. Nicoll; the defendant, as marshal of this district, having levied upon them as the property of Edward Thomson, who owed the United States nearly a million of dollars for duties. The defendant's justification introduced the United States as the real defendants; and they took defence accordingly as priority creditors of Edward Thomson.

The cargoes in question arrived in the United States in the year 1826, in the ships Addison, Woodrup Sims, Scattergood, and Benjamin Rush, shortly after Thomson's failure, and were instantly seized by the United States, as his property, by virtue of their right of priority, under the act of congress, in pursuance of writs issued out of this court the 13th of March, 1826, real debt $500,000. The plaintiff immediately put in his claim to the ships and cargoes, under certain documentary titles derived from Thomson prior to his failure. The United

States, not satisfied with the evidence, continued to detain the property. An agreement was finally entered into to sell the contested property, suffer the proceeds to lie in plaintiff's hands, on giving security for their investment, and try the right of property by jury trial. In pursuance of this wholesome agrement devised to preserve perishable property, the whole matter came before the court in its present shape.

The plaintiff's counsel were R. J. Ingersoll, Mr. Binney and J. Sergeant, Esqs.

The United States were represented by J. Randall and C. J. Ingersoll, Esqs.

The documentary evidence which the plaintiff offered to sustain his right of property, and the evidence of the witnesses, it would be an endless task to detail, as they were the subjects of a fortnight's examination.

On the 14th, the argument of counsel commenced, and ended the 20th, at noon. The court then adjourned, until the next morning at ten o'clock, to charge the jury.

Before WASHINGTON, Circuit Justice.

The learned judge consumed two hours on Saturday morning in the delivery of an extremely lucid and powerful charge. The prominent points adjudicated, as well as touched upon, were principally these: "That the securities or title papers presented by the plaintiff were valid and legal; that the question of consideration did not arise, the execution of the instrument being prima facie evidence of it, and perfectly good, unless disproved by the defendant; that, the title and transfer being good, the allegation of defendant that they were void, on the eight grounds urged in relation to fraud, was not law, inasmuch as no one of the grounds per se constituted a fraud in law or fact. The learned judge then went over the different points as to fraud, and proved that there was nothing in either of them. He animadverted with great severity upon the customhouse officers of 1825; said that they were not only negligent and lazy, but unfaithful; that the frauds were caused by acts of theirs, not only of omission, but of commission; and that they actually threw the shield of lawfulness over the whole transaction by furnishing Thomson with documentary proofs of fairness. As to the point that Floyd S. Bailey being an acknowledged accomplice of Thomson in the tea frauds, and the plaintiff's agent, and the plaintiff being responsible for his acts, the judge said, it was so, if Bailey was a general agent of plaintiff; but not an agent for particular purposes; which was the real fact the jury was to determine. Upon the point that the transfer to Nicoll was a full assignment of property, omitting only a trivial part, which realized to the assignees but $6,000; and, that being so, Nicoll was seized of the transferred property to the use of the United States, in the same manner as any general assignee would be, the learned judge decided that if the jury believed it was the intention of Nicoll and Thomson to execute an instrument to defraud the United States of their priority, the transfer was void, as to the preference, and Nicoll stood as assignee for the benefit of creditors; and the amount not assigned would be no alteration of the thing, if it were trivial, and merely omitted colorably, with a view to carry on the deceit with greater effect. The jury must be fully satisfied of such an intention; fraud was never to be presumed until actually proved; and the jury would of course look at the fact that Thomson still continued his mercantile transactions as usual, and did not make a general assignment until compelled."

The judge commented upon the point whether a mortgage of all property would be an assignment under the act, but gave no decision. As to the question of damages, the judge left it entirely to the jury; if they were satisfied the right of property was in the plaintiff, then the taking by the marshal was illegal, and moderate compensatory, but not vindictive, damages should be given; the verdict would be for the plaintiff, the amount of damages agreed upon, and not for the value of the property, that being already in plaintiff's hands; or for defendant.

The jury allowed the Messrs. Nicoll $220,000, all the property claimed, and damages amounting to $39,249.66.